CUSHMAN & DENISON MFG. CO. v. GRAMMES et al.

(District Court, E. D. Pennsylvania. August 16, 1915.)

No. 1081.

1. TRADE-MARKS AND TRADE-NAMES ⬳98—INFRINGEMENT—REFERENCE TO MASTER—FINDINGS AND FORM OF REPORT.

Where, after an interlocutory decree in a suit for unfair trade and an infringement of a trade-mark, adjudging the facts on both issues in plaintiff's favor, defendant's petition to have the decree modified on the issue of plaintiff's property rights in the trade-mark is sent to the master, with the question of what sum plaintiff should recover, he should find the facts bearing on the petition, unless he finds plaintiff joins in the prayer thereof, and make an interlocutory report thereon, or also find separately what plaintiff would be entitled to on the basis of unfair trade alone and on the basis of both unfair trade and infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⬳98.]

2. TRADE-MARKS AND TRADE-NAMES ⬳98—MASTER—ACCOUNTING FOR PROFITS—DETERMINATION.

Even if the question before the master be only what plaintiff is entitled to recover for unfair trade, it is for him in the first instance to determine whether an accounting for profits by defendant properly enters into the inquiry.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⬳98.]

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. TRADE-MARKS AND TRADE-NAMES ⬦98—MASTER—ACCOUNTING—STATING ACCOUNT—CONTEMPT.

Under rule of practice 63 (198 Fed. xxxvii), providing that all parties accounting before a master shall bring in their respective accounts in the form of debtor and creditor, a party's account is on the basis of a cash statement of moneys received and disbursed, so that defendants are not in contempt for not complying with the master's order to include in their account the names and addresses of their customers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⬦98.]

In Equity. Injunction by the Cushman & Denison Manufacturing Company against Henry A. Grammes and others. Sur interlocutory report of master certifying questions. Cause recommitted to master, with instructions.

Oswald M. Milligan, of Philadelphia, Pa., and Gantz & Tucker, of New York City, for plaintiff.

Fenton & Blount, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. This case presents unusual features. Some of them relate to questions which have been already passed upon and should be regarded as eliminated, except so far as they may be still included among those which may be raised on exceptions to the master's report when it comes to be filed. Others of them may be regarded as still in the case to be determined. A short outline statement of certain record facts may serve to separate the ins from the outs, and enable one to state the governing principles applicable to each.

The plaintiff filed its bill of complaint August 12, 1913, averring both a common-law and a statutory proprietary right in a trade-mark known as the "Gem," and charging both unfair trade and an infringement of its proprietary exclusive privilege, and praying for an injunction and the awarding of damages and profits. On October 6, 1913, a preliminary injunction issued. The cause then proceeded to trial, and defendants, through their counsel, admitted both the trespass and the infringement. Thereupon the cause further proceeded to the entry of a decree adjudicating these facts, and thus far the rights of the parties by making permanent the injunction and referring the cause to have found whether an account of profits should be taken. This was on January 22, 1914. An accounting was found to be called for. A reference then followed to have determined "what sum" the plaintiff should recover. Subsequently there came to the defendants information of facts which were in lethal conflict with the claims of right set up by the bill of complaint. This information was that the claim of a common-law trade-mark had been adjudicated against the plaintiff, and registration of the trade-mark, upon which its statutory right depended, had been denied it. These new aspects of the case were presented to the court in the form of an application to have the decree of January 22, 1914, vacated. This relief was denied by the court. The grievance was re-presented in the form of a motion to open the decree which had first been made. This motion was like-

wise dismissed. The appeal for relief was then renewed under the guise of a petition to have the existing decree modified. No definite action was taken upon this by the court beyond sending it to the master by the order of July 3, 1914.

Recurring now to the proceedings before the master, we have this record: The defendants presented evidence of the facts upon which the prayer of their petition was based. They also presented what they characterize as an account of their dealings in the device to which the dispute between the parties relates. This was not acceptable to the plaintiff as the account to which it claims to be entitled. The master upheld the views of the plaintiff, and by his order indicated that the defendants, in addition to the purely accounting features of the statement, should incorporate in it a list of the names (with addresses) of the customers to whom the clips had been sold, as well as details of production cost, and the facts relating to the credits claimed in the account. The defendants have not complied with this order, and the question of being in contempt has arisen.

[1-3] It will be observed that the undisposed-of petition leaves in the case, undisturbed by any prayer for relief, the finding of unfair competition. The part of the finding which the court is asked to modify is the part of the decree which is based upon the proprietary right. This prelude brings us to a formulation of the principles by which the action of the court should be guided and controlled. This further first calls for an analysis of the situation to which these principles are applicable. Every one has the right to pursue his business or calling free from unlawful interference by others. To him also belongs the right to the possession and use of his property. Each is a right, but the latter only can be properly said to be a right of property. If the former is interfered with by the unfair competition, which is here charged, the wrong is a tort, redress for which is afforded through legal forms by an action for damages and through chancery forms by the added remedy of a restraining order. The basis of the complaint is the tortious conduct of the defendant, and of the remedy compensation for the damage done, as well as protection against further damage. If the owner is deprived of his property, he may establish his right and have the property restored to him, together with the profits, which are also his, received therefrom, for which the defendant must account. To the owner, it is true, belongs the further right to an undisturbed possession and use of that which is his, so that a deprivation of the right of property may involve a tortious act, and there is also at times included in the term "damages" the punitive or vindicatory, as well as the compensatory, thought. None the less there is the indicated essential difference in the two things.

Viewing the present case in the light of this distinction, it is clear that the court cannot proceed to a final award without first finding whether defendant has been guilty simply of the tortious act, or the appropriation of property, or of both. This was done by the decree of January 22, 1914. The decree, it is true, is interlocutory; but as long as it stands it disposes of everything involved in it. We entertain no doubt of the power of control which the court has over such

decrees. This is implied in their very nature. If authority for the existence of such power is required, it may be found in Perkins v. Fourniquet, 47·U. S. 206, 12 L. Ed. 406. This is, however, far from being all. The exercise of power, merely because it is possessed, is the height of unwisdom. The doctrine of stare decisis, where the decision has been made in the very case under consideration, has a value far beyond that of the presumption of correctness. The ruling is much more than merely persuasive, even when the reasoning of the judges by whom it was rendered is such as to bring instant convincement of mind. It is a decision of the questions involved which should not be disturbed by any other than a tribunal having appellate duties. We have the authority of one of the greatest of jurists and statesmen for the truth that bad laws may be borne, but the "jus aut vadum aut incertum" presents a situation which is intolerable.

The decree of January 22, 1914, has not only the original sanction of its first entry, but the double confirmation of·two refusals—one to vacate, the other to open, it. If this were all the record shows, it surely would stand as made. The decree of July 3, 1914, and the opinion of Judge McPherson accompanying it, however, implies its at least partial suspension, and forbids us to treat it as a closed chapter of the controversy. As the question of the property rights of the plaintiff is still in the case, this in consequence affects the duty imposed upon the master to report "what sum, if any, plaintiff is entitled to recover." The controversy has already been unduly prolonged, and the litigation, so far as conducted in this court, should be brought to a final decree. The order of July 3d contemplated a report from the master which would enable the court to make a final decree. It further expresses the will of the court to retain control of the questions otherwise determined by the decree of January 22d. This decree is none the less in force. It, coupled with the order of July 3d, imposes a triple duty upon the master. This would involve a finding of the sum to be found under the decree as made. It would also involve a separate finding of such sum, based upon the unfair competition by itself, in the event of the proprietary property feature being eliminated. Finally, it would call for a report of the facts averred in the petition upon which the order of July 3d was based, so that the court might modify or refuse to change the decree of January 22d.

The order in which these several duties were to be discharged is not indicated in the order. It would therefore be within the province of the master, if so requested by the parties, or if in his judgment such a disposition of the cause was called for, to report first upon the facts of the petition by an interlocutory report, and thus clear the case of the necessity of a finding of more than one sum. The final decree could, of course, be expedited by the parties agreeing upon and joining in a request for a modification of the decree by limiting the sum to be found to the amount which the plaintiff is entitled to recover for unfair competition only. To this, we understand from the report of the master, the plaintiff has agreed. If such is the case, the finding may be accordingly limited. This should enable the master to proceed with what is pending before him. It does not, however, dis-

pose of the special question which he has certified to the court. We do not deem it proper, in advance of the report of the master and of argument upon exceptions, which may be filed to his report, to give expression to the views of the court on the question of whether the amount of defendants' profits affords any aid in the admeasurement of plaintiff's damages, or whether plaintiff is entitled to an accounting for such profits further than to make these observations. If the property right is still in the case, we do not understand plaintiff's right to an accounting to be denied. If the finding is restricted to the sum to which plaintiff is entitled because of unfair trade only, the master can determine whether an accounting for profits properly enters into the inquiry.

When the right of a plaintiff to an accounting is found, rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii) gives ample authority to require the defendant to file such account, and sufficiently designates its form and what it shall contain. In form it must be a debtor and creditor statement. The rule indicates that it shall be on the basis of a cash statement of moneys received and disbursed. The analogue of an account stated by a sales agent or other fiduciary will afford a guide to what is required. If the account is accepted by the plaintiff, the profits have been ascertained, and this inquiry is at an end. If the statement is not acceptable, the case of a hearing upon exceptions to the account of any trustee supplies the required guide. The account, as stated by the defendants, is one thing. The evidence from which the master finds the facts upon which to base an account stated by him is another thing. Care should be taken to keep the distinction clear. The first should be a financial statement in cash account form simply. It should not be a list of possible witnesses, nor a statement of evidence, by which the items of the account may be vouched. The parties may call witnesses or offer evidence bearing upon accounting facts. Subpœnas may issue and include the usual duces tecum clauses. The production of books and papers may be compelled. Rules 62 and 63 and the ordinary rules which pertain to such matters apply. If a defendant objects to account, or a witness is asked to testify, or to produce books or papers, and objection is made, the question raised should be passed upon by the master. If the order of the master is met by a refusal to comply, the refusal may be certified to the court, or the opposite party may ask the master to find the facts and to state an account against the defendants from all the evidence before him.

In making such orders, care should, of course, always be taken to preserve to each party all his rights. Under the guise of requiring an account, or eliciting facts through testimony and evidence, neither party should be required to disclose the course of his dealings, so that a rival or competitor may injure him or gain an unfair advantage. The test is always: Is the requirement relevant to the decision of the cause? Almost everything in such cases must in the first instance be left to the discretion of the trial judge, or of the master acting in that capacity. Bringing these abstractions to the concrete, we decline to adjudge the defendants to be in contempt because of what this record

discloses, and are of opinion that the order requiring the defendants *in their accounting* to give the names and addresses of their customers should be revoked. The basis of the expressed willingness of the defendants to give the information does not warrant a contempt finding. The cause is recommitted to the master, with instructions to proceed in accordance with this opinion. For his guidance we recapitulate the points of instruction:

1. Let the master definitely find whether plaintiff agrees to join with defendants in the prayer to have the decree of January 22, 1914, so modified as to limit the finding against the defendants to one of unfair competition only, and to withdraw all claim to infringement of trade-mark property, and to further agree that the determination of the "sum, if any, which plaintiff is entitled to recover from the defendants" be likewise limited.

2. If the inquiry is so limited by agreement, the master may then determine "the sum, if any, to which plaintiff is entitled," and questions which may incidentally arise, including the one of whether, in the case as so limited, the defendants should be called upon to disclose the amount of moneys received by them. If the plaintiff has not so agreed, or does not do so, then the master, if the parties so request and stipulate, or if in his judgment such interlocutory report will expedite the decision of the cause, may report a finding of all the facts bearing upon the petition referred to him by the order of July 3, 1914, or the master may proceed to determine all the questions now before him, and report, in addition to the findings above indicated, findings of the sum, if any, to which plaintiff is entitled on the basis of a finding of unfair trade alone, and also on the basis of a finding of both unfair trade and infringement of trade-mark property being in the case, these amounts to be separately stated, respectively.

This order is made with a view to having the case in shape for final decree on exceptions, if any are taken, to the master's report.